# LAWRENCE WEITZELL AND ANNA WEITZELL, HIS WIFE,

## vs.

# WEST VIRGINIA PULP & PAPER COMPANY.

*Lateral Support—Interference—Intervening Land.*

In an action for damage to plaintiff's land by the removal of coal from neighboring land, separated from plaintiff's land by an intervening road, *held* that, there being no evidence tending to show that the intervening road was in its natural state, and there being affirmative evidence that plaintiff's land was not in its natural state, owing to previous mining operations thereunder, plaintiff could not recover.

*Decided January 12th, 1921.*

Appeal from the Circuit Court for Allegany County (HENDERSON, J.).

The cause was argued before BOYD, C. J., THOMAS, PATTISON, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Albert J. Doub,* with whom was *Edward J. Ryan* on the brief, for the appellants.

*Horace P. Whitworth,* for the appellee.

ADKINS, J., delivered the opinion of the court.

This was an action of tort for alleged injury done the property of appellants by the appellee in pillaring and removing coal from its property up to the county road lying between the properties of the appellants and the appellee.

There are two counts in the *narr.* The first alleges the ownership of the respective properties; the valuable buildings and other improvements on the appellants' lot; the situ-

ation of said lot on a steep slope known as "Westernport Hill"; that said lot and the land contiguous, adjacent to and in the neighborhood thereof, were underlaid with coal which supported and maintained the surface of all the said property; that appellee, prior to the happening of the injuries complained of was engaged in the operation of removing coal from under the property adjacent to and adjoining the premises of the appellants, which coal helped to support the appellants' said property; that appellee, on or about the first day of August, 1918, dug into and under the tracks or parcels of land lying contiguous to appellants' property and on the lower side thereof, and removed the coal therefrom without leaving any support or pillars to maintain appellants' property or the property adjacent and contiguous thereto, well knowing that the said coal could not be so removed without damaging and ruining the said land and buildings of appellants, and so recklessly dug, removed and pillared the said coal that as a result therefrom the lateral support of the appellants' property was taken away and the foundation of their house was injured, and the walls, plaster and papering thereof were damaged and a valuable cistern thereon was destroyed, and other damage to the property was thereby caused, and the said property has thereby been rendered unfit as a dwelling, and has depreciated in value, all of which damage resulted from the negligence of the defendant as aforesaid.

The second count differs from the first in that it attempts to cover injury done by removing coal from under property not immediately adjacent to appellants' property by adding the words "or under the property below and within a very few feet of said premises, and almost adjacent to and almost adjoining said premises, and so near said premises that such pillaring could not safely be done without damage to the plaintiffs' property under all the circumstances, and which said coal so pillared helped to support and maintain the plaintiff's said premises." And that "the defendant knew, or ought to have known, that the said coal could not be re-

moved without damaging and ruining the said land and buildings of the plaintiffs." Appellee plead the general issue plea and the plea of *res adjudicata,* on the first of which pleas issue was joined. The second was traversed and issue joined on the traverse.

There was no testimony offered on either side on the question raised by the second plea, nor was there any evidence tending to show negligence in the manner of removing the coal. And it is strongly contended by appellee that there was no evidence legally sufficient to show that the injury to appellants' property was caused by any of the acts of the appellee complained of. But in the view we take of the case it will not be necessary to decide that point. There is evidence in the record that in 1912 or 1913 appellants' house was injured while coal was being dug from under their property by The Davis Coal & Coke Company, and that the company paid for the repairs on the demand of appellants. There was no testimony offered to show that appellants' land was in its natural state at the time of the pillaring and removal of coal complained of in this suit.

At the conclusion of appellants' (plaintiffs') testimony the trial court granted a prayer instructing the jury "that under the pleading in this case there is no legally sufficient evidence permitting the plaintiff to recover and their verdict must be for the defendant." The only bill of exception is based on the granting of this prayer.

In granting the prayer JUDGE HENDERSON said:

"The court is of the opinion that the plat, taken in connection with Mr. Brown's testimony, shows that the two properties do not adjoin and are separated at least by the width of the county road and possibly a little more."

The only case cited by counsel and the only one we have been able to find where the mining complained of was under land owned by one whose lines did not extend to the lines of the property claimed to be injured is the English case of *Corporation of Birmingham* v. *Allen,* 6 Chancery Div. 284.

In that case JAMES, L. J., said: "As the Master of the Rolls in this case has pointed out (referring to the meaning of the word adjacent), it does not necessarily apply to a case where the adjacent owner is the owner of a mere strip of land not affording support"; "that is the adjacent land, that is the neighboring property, which in extent would in the natural state of things have afforded the requisite support to the dominent tenement." "I cannot upon principle find any reason for extending the liability to an owner of some land beyond the zone which is so described." "There is no distinction in principle whether the intermediate acts which have changed the natural position of the properties are due to the plaintiff himself or to somebody else, because if he has lawfully worked his mines he would say, 'I have done no wrong; I have done nothing that I was not lawfully entitled to do. I have worked out my mines under my own land as far as I might lawfully do so, and having done that I have now a cavity under my land, and I now warn you, my neighbor, that you must not follow my example and work your mines, because if you work your mines in addition to my working my mines you will let down my house or the surface from which I have removed my support'—thus throwing it entirely upon him"; citing *Partridge* v. *Scott*, 3 M. & W. 220. The Lord Justice holds that the same principle applies if someone other than the plaintiff or defendant has intervened and destroyed that which was the natural support of the plaintiff's property, that is to say, that portion of the neighboring land which in a state of nature did exist for the purpose of support.

Without discussing other interesting questions ably argued by counsel on both sides, we are content to rest our decision upon the authority and reasoning of the above case. In the case at bar there is no evidence tending to show that the intervening road is in the natural state and there is affirmative evidence that appellants' land is not in its natural state.

*Judgment affirmed, with costs to appellee.*